567 So.2d 588 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
John T. KEYS, Jr.
No. 88-B-2441.
Supreme Court of Louisiana.
September 7, 1990.
Wood Brown, III, Executive Counsel, Cheri A. Cotogno, Asst. Counsel, for Louisiana State Bar Ass'n, defendant-applicant.
John T. Keys, Jr., pro se.
Russell J. Schonekas, for John T. Keys, plaintiff-respondent.
*589 LEMMON, Justice.[*]
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this proceeding against one of its members, alleging misconduct in the handling of a succession. The central issue involves the attorney's responsibility for the unauthorized removal by his secretary-office manager of over $40,000 from the succession account over a period of fifteen months and her use of the funds for office operating expenses.
Respondent was retained to handle the subject succession in April of 1984. The succession assets consisted primarily of five parcels of real estate, valued at $170,500, and six $10,000 certificates of deposit. Because there were disputes among the heirs, an administration was necessary.[1]
Respondent opened a checking account to be used solely for the succession funds. The administratrix of the succession was the only authorized signatory on the succession account, but the account checkbook was kept at respondent's office. The administratrix went to respondent's office periodically to sign checks as expenditures were required for succession business. However, except for the outset payment of the expenses of the last illness, the funeral, and the initial successions costs, respondent neglected to obtain court approval for the expenditure of succession funds.
The misconduct under review involved eleven checks drawn on the succession account between June 13, 1984 and September 17, 1985, all of which were payable to respondent. The checks, ranging in amount from $600 to $8,000 and totaling $42,400, were deposited into respondent's office operating account. The administratrix's signature was affixed to the checks, but she did not authorize or have knowledge of these withdrawals, all of which were made without court approval.
In early 1988 one of the succession heirs filed a complaint with the Bar Association about the unauthorized withdrawal of the funds.[2] After an investigation the Bar Association charged respondent, in written specifications of misconduct, as follows:
That you were retained as an attorney in connection with the succession of Mary Pollard in approximately April of 1984 until June of 1987. Ann Vadell was appointed administratrix of said succession. In connection therewith, you wrote checks to yourself totaling approximately $45,900.00 without court approval. Further, you signed Ann Vadell's name to said checks. The Committee is of the opinion that the above and foregoing conduct is in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3), and Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility and Rule 8.4 and Rule 1.15 of the Rules of Professional Conduct.
It is further alleged that you did commingle and convert said funds to your own use in violation of Disciplinary Rule 1-102 and Disciplinary Rule 9-102(A)(B) of the Code of Professional Responsibility and Rule 8.4 and Rule 1.15 of the Rules of Professional Conduct.[3]
At the investigatory hearing the administratrix testified that she and several of the heirs had consulted two separate attorneys when respondent failed to complete the succession or to render an accounting requested by them. The two attorneys testified that they met with respondent in May, 1987, after obtaining a consent judgment on a rule to compel an accounting. At the meeting respondent disclosed the fact of the unauthorized withdrawal of funds, about half of which had been replaced, and made arrangements to replace the remainder *590 with interest.[4]
In his defense respondent testified that his secretary-office manager had transferred the funds from the succession account to his operating account without his knowledge or consent. Respondent, who was primarily an oil and gas lawyer, explained that he operated several businesses from his law office. He maintained a checking account for daily office operations and about four separate business accounts. His secretary, who had worked for him for approximately fifteen years and was the only employee in the office during the pertinent period, regularly paid respondent's personal and business expenses from his operating account, transferring funds from his other accounts as necessary. She had apparently treated the succession account in the same manner as respondent's business accounts. She was a signatory on all of respondent's bank accounts and had his permission to sign his name to checks. Respondent relied on her completely and never reviewed cancelled checks or bank statements.
At a rescheduled hearing the secretary testified that she withdrew money from respondent's business accounts whenever the balance in the operating account fell below $1,000. When the succession account was opened, she also transferred funds from that account to the operating account. She verified that respondent was not aware of the unauthorized withdrawals from the succession account. She justified her actions on the basis that she was not aware of the function of an escrow account, but knew respondent was to earn a significant fee for handling the succession. According to respondent's secretary, respondent first learned of the unauthorized withdrawals when she reviewed the various bank accounts with him in early 1987, just before she left her employment and moved to another area.
On March 11, 1987, respondent returned $22,400 to the succession account, but did not disclose the fact of the withdrawals to the administratrix. When respondent met with the two attorneys in May of 1987 and disclosed the unauthorized withdrawals from the succession account, he did not mention that the secretary had signed the administratrix's name on the checks. He resigned as succession attorney in June, 1987 and returned the advance fee paid him by the administratrix.
The commissioner appointed by this court interpreted the evidence favorable to respondent and found that respondent neither directed the secretary's actions nor knew of the withdrawals at the time of occurrence. Nevertheless, the commissioner noted that respondent's misconduct in failing to properly supervise the handling of the succession funds resulted in detriment to his client and the succession heirs. The commissioner found further misconduct in respondent's failure to communicate the discovery of the missing funds promptly to either the administratrix or her subsequent attorney and his failure to file a timely accounting.[5] As to mitigating factors, the commissioner noted that respondent reimbursed a substantial amount of the funds shortly after his discovery of the withdrawals from the succession account and reimbursed the remainder as soon as he was financially able to do so, all before the complaint was filed with the Bar Association. Accordingly, the commissioner recommended a suspension of thirty days.
As a threshold issue in this court, respondent argues that the proceedings should be dismissed because the Bar Association failed to prove the express specifications of misconduct in the notice served on him. Respondent notes that the evidence *591 showed it was his secretary, not him, who signed the administratrix's name to the checks and deposited the proceeds in the operating account. Citing In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), he contends that procedural due process prohibits his being charged in a disciplinary proceeding with forging checks and intentionally converting the proceeds to his own use, and then being sanctioned for the uncharged misconduct of negligent failure to supervise the handling of the succession funds.
In a bar discipline proceeding due process requires that an attorney be given notice of the misconduct for which the disciplinary authority seeks to sanction him, as well as an opportunity to explain his conduct or defend against the charges of misconduct. In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917). Conversely, due process prohibits sanctioning the attorney for unrelated misconduct revealed by the evidence in the disciplinary proceeding when the attorney had not been notified that the uncharged violations would be considered as disciplinary offenses or that he should be prepared to present a defense as to that misconduct.[6]Louisiana State Bar Association v. McGovern, 481 So.2d 574 (La. 1986).
In the present case respondent was initially charged with intentionally writing unauthorized checks on the succession account and applying the proceeds to his own use. Respondent did not dispute that unauthorized withdrawals from the succession account were made or that the proceeds were used to pay his personal and business expenses. Rather, he defended the allegations by asserting the fact that his secretary made the unauthorized withdrawals without his knowledge and consent.
Under a fair interpretation of the specifications the charge of respondent's intentional misuse of succession funds for his own benefit must be viewed as including the lesser charge of respondent's negligence in failing to set up adequate procedures for safeguarding client's funds under his control. Moreover, the purpose of requiring notice of the charges and a subsequent opportunity to be heard on the charges is to prevent prejudice to the accused attorney in preparing and presenting a defense. Under the circumstances of this case we conclude that respondent was not prejudiced by lack of notice that his responsibility for his employee's misconduct concerning the client's funds under respondent's control would be an issue in these proceedings.
On the merits of the case, the Bar Association, disagreeing with the commissioner's findings, contends that the evidence proved respondent's knowledge of his secretary's mishandling of the succession funds. The Association points to the testimony of the two successor lawyers concerning respondent's admission to them that "he had taken" the funds.
Once the disciplinary authority has proved that a client's funds under the attorney's control have been misused, the attorney has the burden of proceeding with evidence of his freedom from culpability in the misuse of the funds. Cf. Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002 (La.1986) (the burden of going *592 forward with the evidence is on the attorney who failed to deposit clients' funds in a separate bank account and asserted that he had used other means to safeguard the funds). Here, the Bar Association proved that the client's funds under respondent's control were misapplied to respondent's own use. However, as to respondent's knowledge of the unauthorized use, the testimony of the two attorneys, taken in context, merely reflected respondent's disclosure at the meeting that succession funds had been taken without authority and that he had replaced some of the funds and would replace the remainder. The attorneys were not specifically questioned whether the identity of the person who signed the unauthorized checks was discussed at the May, 1989 meeting. On the other hand, respondent produced his own testimony and that of his former secretary which clearly showed his lack of concurrent knowledge of the misuse of the funds, and their testimony was not undermined by any documentary or other testimonial evidence.[7]
We conclude that the evidence established that respondent did not authorize or know of the secretary's unauthorized withdrawals from the succession account at the time of the occurrence.
The remaining issue is respondent's responsibility, in a disciplinary proceeding, for the misconduct of his employee who handled the client's funds under respondent's control and who used the misappropriated funds for respondent's benefit.[8]
A lawyer is responsible for the conduct of a nonlawyer employee when similar conduct by a lawyer would be a violation of the disciplinary rules, if the lawyer ordered the conduct, ratified the conduct, or had knowledge of the conduct at a time when the consequences could be avoided and failed to take reasonable remedial action. See 1 G. Hazard & W. Hodes, The Law of Lawyering § 463 (1985). A lawyer who has supervisory authority over a nonlawyer employee is not required to guarantee the employee's proper conduct, but the lawyer has the duty to make reasonable efforts to ensure that the employee's conduct is compatible with the professional obligations of the lawyer. Id. What constitutes reasonable supervisory efforts is a determination to be made according to the facts and circumstances of the particular case.
While respondent did not know of the misuse of the funds in the present case at a time when the consequences could have been avoided, his negligence in failing to establish adequate procedures for handling the client's funds resulted in the commingling of the client's funds with those of the attorney and the use of the client's funds for the attorney's personal purposes. Perhaps an attorney may blindly trust an employee with his own funds, but the attorney who undertakes to handle a client's funds has the duty to take reasonable steps to safeguard the funds. Here, respondent's duty under DR 9-102 to safeguard the funds of a client included the duty of reasonable supervision of the nonlawyer employee who actually handled the funds. Respondent failed to instruct his employee on the concept of escrow accounts and failed to check periodically the handling of the funds held in escrow. Respondent's supervisory failures over a long period of time created a fertile environment for his employee's misuse of the funds.
We conclude that respondent, because of his almost total disregard for establishing procedures to safeguard a client's funds under his control, should be subject to some sanction on account of the resulting *593 commingling and misuse of the funds. Moreover, respondent clearly failed to maintain complete records of the client's funds and to render appropriate accounting, in violation of DR 9-102(B)(3), and neglected a legal matter entrusted to him, in violation of DR 6-101(A)(3).
In the determination of penalty, substantial mitigating factors listed in Standards for Imposing Lawyer Sanctions, § 9.32 (1986) are applicable in this case. These include absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely restitution well before the threat of disciplinary or legal proceedings, timely efforts to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and cooperation in the proceedings, and remorse. Moreover, there were no bad faith or fraudulent actions by respondent in connection with the violation, no lengthy deprivation of funds or great expense or inconvenience to the client (except for the delay in providing the requested accounting), and no ultimate injury to the client. See Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), which set out guidelines for deciding the penalty in cases involving misuse of clients' funds. None of the aggravating factors listed in Standards for Imposing Lawyer Sanctions, § 9.22 (1986) were present except substantial experience in the practice of law (twenty-two years), and that factor was tempered by respondent's unblemished reputation during this period.
Because there was negligence rather than willfulness, because there was a total absence of dishonesty, because there was swift repudiation of the employee's misconduct and replacement of the misused funds, because this was an isolated incident in a lengthy legal career, and because respondent's remorse indicates the lesson learned and the lack of need for a substantial sanction, we conclude that a brief suspension will adequately serve the purpose of these disciplinary proceedings, which is to preserve the integrity of the profession, to safeguard the public, and to deter other attorneys from misconduct.
Accordingly, it is ordered that respondent, John T. Keys, Jr., be and he hereby is suspended from the practice of law in Louisiana for thirty days from the date of finality of this judgment. All costs of this proceeding are assessed to respondent.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] This was the only succession ever handled by respondent which required an administration.
[2] Almost a year before the complaint, respondent had notified attorneys for the heirs about the missing funds and had replaced the funds with interest.
[3] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. Some of the alleged violations in this case occurred before the effective date.
[4] Respondent replaced the balance of the funds by payments of $12,000 in May and $10,000 in July, 1987.
[5] The accounting filed by respondent in November, 1986, in response to the rule to compel, was not approved by the court because the expenditures had been made without court approval.

On the subsequent petition of the successor attorney, the court rendered a judgment of possession recognizing the heirs as the owners of the immovable property. In the petition the heirs released the administratrix from accounting for the other succession assets.
[6] The attorney in Ruffalo was originally charged with soliciting clients through an agent, Orlando. At the hearings both Orlando and the attorney testified that Orlando did not solicit clients, but merely investigated cases for the attorney. When the evidence showed that some of the investigations involved Orlando's employer, another charge was added during the hearing, accusing the attorney of hiring Orlando to investigate his own employer. An objection to the amended charge was overruled.

The Court held the attorney's right to procedural due process had been violated because his disbarment was based on evidence taken before he was notified that discipline was being sought on the basis of his hiring Orlando to investigate Orlando's employer. The Court noted that an attorney in a disciplinary proceeding must be notified before the evidentiary hearing of the charges against him and then must be afforded an opportunity for explanation and defense of those charges. The Court further noted that no one knows how the charge would have been met if originally included among those leveled against the attorney.
[7] During the fifteen-month period of unauthorized withdrawals, most of the deposits into the succession account were small sums, probably rental income from the immovable property and interest income from the certificates of deposit. However, there were several deposits of large sums in which notations on the deposit slips indicated the proceeds of various certificates of deposit. The unauthorized withdrawals probably represented the proceeds of several matured certificates. Nevertheless, there is no indication in the record that respondent knew whether his employee "rolled over" the matured certificates or deposited the proceeds into the succession account.
[8] Respondent's liability in a civil action is not at issue here. The only issue is his responsibility which gives rise to disciplinary sanctions.