LEMMON, Justice.
This disciplinary proceeding against a member of the Louisiana State Bar Association is based on alleged misconduct concerning seven separate clients. The complaints primarily involved neglect of the legal matters entrusted to respondent by the clients.
Naomi Martin employed respondent when she was accused of tampering with a utility company’s meter. After successfully defending the criminal charges, respondent received $100 from the client in January of 1982 to be used as costs in a suit against the utility company for falsely accusing her of tampering. Respondent filed suit, but failed to follow up on the case and failed to bring the ease to trial. The client made numerous phone calls to respondent which went unanswered.
In June of 1984 Barbara Sennette retained respondent to represent her minor son in a personal injury case on a contingent fee basis. He did not collect any costs or advanced fees from her and in fact furnished her with $150 to consult a physician. In August of 1986 respondent informed the client that he was mailing her some papers in the suit, but she heard nothing further from him and could not get him to return her phone calls. Respondent never provided her with any documentation that a suit had been filed, and the record does not show whether suit was ever filed.
Angela Vidrine hired respondent to represent her in a claim for personal injuries. On January 8, 1985, the client gave respondent $125 for court costs. She read in the newspaper that her suit had been filed, but she did not receive any communication from respondent concerning the suit and could not get respondent to return her phone calls.
In June of 1984 James Greene retained respondent to represent him in a personal injury claim on a contingent fee basis. Respondent appeared in traffic court to defend the traffic charge against the client in the same incident. However, respondent failed to file a civil action on behalf of the client or to notify the client timely to seek other counsel.
Rosemary Hunt retained respondent in late 1985 to represent her in a personal injury case on a contingent fee basis. Respondent did not collect any filing fees or other advance payment from the client. He failed to advise her whether he filed a suit. The client’s car was repaired through the tortfeasor’s insurer, but she did not know whether respondent had anything to do with accomplishing the repairs.
*1166 Ralph Brossette employed respondent to represent him to recover damages for personal injuries sustained in two separate accidents which occurred in 1981 and 1984. Respondent filed both suits, but failed to communicate with the client regarding their status. The client hired another lawyer who checked into the status of the suits after he was unable to obtain any cooperation from respondent. The new lawyer determined that the first suit had been dismissed with prejudice when respondent failed to appear at the trial and that the second suit had been dismissed when respondent failed to respond to discovery requests and failed to appear at the hearing on a motion to dismiss because of the discovery deficiencies.
Willie Phillips retained respondent to represent him in a medical malpractice case in 1983. In November of 1984 the client gave respondent $225 for suit expenses. Respondent appeared before the Social Security Administration to represent the client in his disability claim, but failed to pursue the medical malpractice claim. The client believed that a suit was filed, but has been unable to obtain his records or any documentation concerning the claim.
The Bar Association charged respondent with violating Disciplinary Rules 1-102(A), 6 — 101(A)(3) and 7-101(A)(2) and (3) by neglecting legal matters entrusted to him, failing to carry out contracts of employment entered into with a client for professional services, and prejudicing or damaging the client during the course of the professional relationship.[1]
The commissioner appointed by this court to receive evidence scheduled a hearing, but respondent failed to appear. However, the attorney for whom respondent had worked from 1979 to 1985 (and who was respondent’s brother-in-law) did appear and testified that respondent had excellent legal skills and fine work habits except in certain types of cases and at certain times. He stated that after he confronted respondent when problems with depression affected respondent’s work, respondent sought psychiatric consultation and moved into a less demanding practice. The hearing was held open for receipt of medical reports and other evidence by respondent.
At the continuation of the hearing the psychiatrist who treated respondent filed a report which stated that he had evaluated and treated respondent with psychotherapy and anti-depressant medication from May 24, 1988 to August 11, 1988, at which time respondent “was less depressed overall”. Inasmuch as ten months had elapsed between the last visit and the hearing, the doctor was unable to give any further indication of current prognosis or response to treatment.
Respondent also appeared at the continuation of the hearing. Respondent testified that although he had difficulty handling certain types of legal matters, he had handled Social Security claims and criminal matters to the complete satisfaction of his clients. He had recognized his depression problems and his inability to function in an intense personal injury practice, and had sought counseling, but did not have the funds to continue the treatments. Although he had improved psychologically, he has not taken any additional clients and was in the process of turning his few remaining files over to other lawyers. At the time of the hearing he was working for an insurance company as a subrogation clerk.
As to the specifications of misconduct, respondent conceded the accuracy of the complaints. He expressed remorse for his misconduct and stated his desire to continue in the practice of law, at least at some time in the future when he was capable of functioning better.
The commissioner recommended that respondent be suspended from the practice of law for one year, during which time he should undergo active therapy to help him deal with his emotional problems. The commissioner further recommended that respondent be allowed to return to practice only with the understanding that he contin *1167 ue his active therapy and that he submit to monitoring of his practice by an attorney for a period of at least six months.
Disciplinary counsel points out that respondent’s neglect and failure to carry out his employment caused serious damage to some clients and potential injury to all seven. Arguing that respondent’s evidence established only a minor mental impairment and a brief period of treatment, counsel contends that the proved mental condition was a mitigating factor, but did not excuse the misconduct. After reviewing the pertinent aggravating and mitigating factors, disciplinary counsel recommends a two-year suspension, with readmission conditioned upon proof that he no longer suffers any mental impairment which would adversely affect his resumption of practice.
Respondent’s misconduct consisted of neglect and inattention to his clients’ affairs, but did not involve any dishonesty or any mishandling of clients’ funds. Nevertheless, persistent neglect and inattention by lawyers not only lowers the public image of the profession, but also frequently causes damage or potential damage to the clients. Furthermore, while a sophisticated client can readily avoid damage by quickly discharging a procrastinating lawyer, most clients are not so sophisticated as to recognize the potential damage which can be caused by an inattentive lawyer. The facts of this case warrant a period of suspension from the practice of law.
The most serious aggravating factors in this case are multiple offenses and a pattern of misconduct. See Standards for Imposing Lawyer Sanctions § 9.22 (1986). Of course, this is the type of misconduct which generally manifests itself in a pattern of multiple occurrences. Other aggravating factors include vulnerability of the victims, discussed above, and substantial experience (sixteen years) in the practice of law.[2]
There are several significant mitigating factors, the most important of which are absence of a dishonest motive, personal and emotional problems, mental impairment and remorse. See Standards for Imposing Lawyer Discipline § 9.32 (1986). Other mitigating factors include a cooperative attitude toward the proceeding (although belated) and a delay in the proceeding not attributable to respondent.
Proof of mental impairment caused by depression was sketchy, but tended to establish a relationship between a state of depression and the problems in respondent’s practice between 1983 and 1987 which were not encountered in his first ten years of practice. Moreover, respondent acknowledged the problems by seeking treatment and is entitled to some degree of mitigation of penalty. On the other hand, there was no proof that the condition was under control at the time of the hearing, and there should be some safeguard to insure protection of the public upon respondent’s return to practice.
The primary purpose of lawyer discipline is not to punish the lawyer, but to preserve the integrity of the profession, to safeguard the public, and to deter other attorneys from misconduct. Louisiana State Bar Association v. Keys, 567 So.2d 588 (La.1990) (No. 88-B-2441). We conclude that the purpose of lawyer discipline can be achieved in this case by a suspension of six months, with readmission conditioned upon respondent’s showing that any mental impairment has improved to the extent that an adverse effect on his practice is unlikely.

Decree

It is ordered that respondent be suspended from the practice of law for six months, with readmission conditioned upon a showing that any mental impairment has improved to the extent that it will not likely have an adverse effect on his practice. All *1168 costs of these proceedings are assessed to respondent.

. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The violations alleged in these proceedings occurred before the effective date of the new Rules.

. Respondent also had a prior disciplinary offense, receiving a public reprimand in 1989 for neglect and failure to complete legal work at some unspecified point in time. However, because this is the same type of misconduct and apparently occurred in the same time frame as the conduct in the present case, this offense is properly considered under the aggravating factor of multiple offenses.