### In re Joseph S. WOOL, Esq.

[733 A.2d 747]

No. 99-064

May 10, 1999. Pursuant to the recommendation of the Professional Conduct Board filed February 17, 1999, and approval thereof, it is hereby ordered that Joseph S. Wool, Esq. be publicly reprimanded for the reasons set forth in the Board's report attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

Attorney Wool shall also be placed on probation for 18 months with the conditions set forth in the attached report; however, the potential sanction in Condition 1 of immediate suspension is modified to require appropriate prior review by the Board. The period of probation shall begin on June 1, 1999.

### Final Report to the Supreme Court

Respondent has been a member of the bar of the State of Vermont for more than sixty years. This disciplinary proceeding is a result of his conduct in representing three different clients.

### PCB File No. 94.03

Respondent represented MB in the summer of 1992 in connection with some post-divorce litigation. MB paid respondent an advance of $1000 in July of 1992. MB was not satisfied with the quality of the representation he received during 1992.

In the spring of 1993, MB realized that he would need to pursue some additional issues in court. He wanted to hire another lawyer to help him. He contacted respondent and asked for a refund of the $1000.

Respondent told MB that he had already provided services in excess of the $1000 advance. MB asked for an accounting as to how the $1000 fee had been spent.

Respondent prepared three documents, none of which properly detailed the scope of respondent's services to MB. Each is simply a list of charges for services performed on certain dates, without specification as to how much time respondent spent on each of these services. Further, all of the letters are inconsistent.

The first letter claimed that MB owed respondent $230. The second, written some two weeks later, claimed that $525 in services had been rendered, but noted the $1000 paid on account. This would have left a balance of $475 owed to MB. Subsequently, respondent amended this bill, adding an additional $345 in charges for services rendered in June and July of 1993. MB had not retained respondent to represent him in June or July of 1993.

There is some evidence that respondent may have provided some legal services to MB at that time.

As of this date, respondent has yet to provide MB with a detailed explanation as to how respondent applied the $1000 fee.

Disciplinary Rule 2-106 prohibits a lawyer from collecting an excessive fee. In order to determine whether a fee is excessive, the lawyer needs to be able to account to the client as to what the lawyer did to earn the fee. Because of respondent's failure to account for his services, it is impossible to determine whether or not the $1000 fee was earned.

Disciplinary Rule 9-102(B)(3) imposes upon all lawyers a duty to maintain "complete records of all funds . . . coming into the possession of the lawyer" and a duty to "render appropriate accounts to the client regarding them." We find respondent violated that disciplinary rule by failing to comply with his duty to render an appropriate account to MB.

## PCB File No. 94.04

Respondent represented FM, an elderly man entitled to monthly Social Security and veteran's benefits. During 1986, FM was incarcerated. He gave respondent a power of attorney and asked respondent to take care of his finances for him. At that time, FM was receiving veteran's benefits of $135 per month and Social Security benefits of $337 per month.

In July of 1986, respondent opened a trust savings and checking account at a local bank. There is some evidence that some of FM's monthly checks were deposited to that account. There is some evidence that funds were withdrawn from the account. There is no evidence as to how those funds were expended. There is no evidence as to when that account was closed.

In early 1992, one HC, the niece of respondent's client FM, telephoned respondent. She had FM's power of attor-

ney. She asked respondent for an accounting of her uncle's money that had come into respondent's possession during the time her uncle had been incarcerated.

Respondent had a few records of this account, but they were in no way complete. Respondent wrote to the bank in February of 1992 and on at least three other occasions, asking the bank to supply records about the account. HC continued to contact respondent, seeking information about her uncle's funds. She filed a complaint with this Board. Bar counsel also contacted respondent, seeking information about FM's assets.

Finally, in June of 1993, a bank representative wrote to respondent that it would be able to search its records for information about the trust account. However, the research would cost $15 per hour. Respondent elected not to have the bank proceed with the research.

At sometime later, bar counsel began a full investigation into HC's allegations of mismanagement. By that time, the bank records had been destroyed. There is now no reliable way to determine how much money went into the account, when the money was withdrawn, and to whom the money was paid. The parties have stipulated — and we so find — that respondent has not accounted for at least $2000 that he received in trust for FM while FM was incarcerated.*

Respondent had a duty to maintain records of the trust funds and to account for them to HC as FM's attorney in fact. DR 9-102(B)(3). His failure to expend the $15 an hour to obtain essential bank records, knowing that bar counsel was investigating HC's complaint, is inexplicable. This failure to account for the funds violates DR 9-102(B)(3).

Respondent has an obligation to "[p]romptly pay or deliver to the client as

---

*This information appears at page 2, par. 5 of *The Parties' Jointly Recommended Conclusions of Law and Sanctions*, filed February 9, 1998.

requested by a client the funds . . . in the possession of the lawyer which the client is entitled to receive." DR 9-102(B)(4). The client, via the attorney in fact, HC, sought return of whatever funds respondent had received on behalf of her uncle but which respondent had not returned or expended for her uncle's benefit. Once the client requests return of trust funds, the burden is on the attorney to return the funds or demonstrate that all funds have been returned to or used for the benefit of the client. See, e.g., *Louisiana State Bar Ass'n v. Keys*, 567 So. 2d 588 (La. 1990) (once the disciplinary authority has proven that a client's funds under the attorney's control have not been properly accounted for, the attorney has the burden of proceeding with evidence of his freedom from culpability in the misuse of the funds.) Here, respondent is unable to demonstrate that the funds were returned or properly expended. He is, therefore, in violation of DR 9-102(B)(4).

### PCB File No. 94.61

Unlike the prior two cases of improper use of client funds, this case involved improper contact with a represented party.

In 1994, respondent represented HS in a divorce from JS, her husband. JS was represented by counsel. Respondent made several discovery requests of JS through his counsel. He was not satisfied with the resulting production. Therefore, he filed, among other motions, a motion for contempt, requesting that JS be found in contempt and jailed for his failure to produce ordered documents. Respondent sent copies of the cover letter and all the motions directly to JS as well as to JS' attorney.

Based upon the parties' stipulation, we concluded that the communication with JS directly was the result of inadvertence and neglect, and was not a purposeful attempt to communicate directly with a represented party. Fortunately, JS was nonplused by this direct communication and no injury resulted. In any event, the misconduct violated DR 7-104(A)(1).

### SANCTION

In considering the appropriate sanction, we consider the duty violated, the lawyer's state of mind, and any aggravating or mitigating circumstances.

The parties have stipulated that respondent's state of mind is one of negligence, not willfulness, and we are bound by that stipulation. In at least the first two cases, the duty violated is significant: misuse of client funds.

We are guided by § 4.13 of the ABA Standards for Imposing Lawyer Sanctions, which provides that a "[r]eprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client."

In the first case, PCB File No. 94.03, the client suffered injury, although the scope of the injury is unknown. Taking the evidence in the light most favorable to respondent, respondent has failed to return or account for at least $130—over 10% of the retainer he was given. This factor is aggravated by the fact that respondent's failure to return the funds prevented him from obtaining substitute counsel.

In the second case, PCB File No. 94.04, FM suffered injury or potential injury because respondent has not accounted for at least $2000 that he received in trust for FM while he was incarcerated. This situation is aggravated by the fact that FM was vulnerable at the time and not in a position to take care of his own finances.

As to the third case of improper contact, we find that § 6.34 of the ABA Standards is most applicable. That section provides that a private admonition is appropriate here because of the isolated nature of the misconduct and the complete lack of injury.

In aggravation, we note that respondent has a disciplinary history of four

582

prior private admonitions, although, in mitigation, we note that they are all now remote in time. Three occurred in the late 70's and one in 1988. He has substantial experience in the practice of law and has evidenced a pattern of misconduct. He failed to carefully execute his fiduciary duties owed to clients who were vulnerable. We find no mitigating circumstances.

The Board recommends to the Supreme Court that it publicly reprimand respondent. In order to fully protect the public, we feel that respondent must also be placed on probation for the next 18 months with the following conditions:

1. Respondent, at his expense, shall have a CPA conduct a compliance review of his trust accounts within 90 days of the Supreme Court's order to ensure that he is in compliance with the record keeping requirement of DR 9-102. If the auditor determines that respondent is not in compliance, respondent shall have 60 days in which to correct any problems. If the bookkeeping problems remain uncorrected at the end of 60 days, respondent shall be suspended from the practice of law immediately. He will not be readmitted until he has proven by clear and convincing evidence that his accounts are in compliance with DR 9-102.

2. Respondent shall have no new, proven disciplinary offenses, the allegations of which are currently unknown to bar counsel, during the period of probation, or be subject to immediate violation of his probation.

3. Respondent shall successfully complete, within the period of probation, eight hours of continuing education in the areas of case file management, attorney-to-client fee obligations, and trust account management, and report his progress to bar counsel.

4. Within 60 days of entry of the Court's order, respondent shall refund to his former client, MB, $130 and shall provide to MB a complete and accurate accounting of what services he performed to earn the remainder of the $1000 fee. In the event that MB finds the fee charged by respondent to be excessive for services actually rendered, respondent shall request MB to join him in submitting this matter to the VBA fee arbitration program for resolution.

5. Within 60 days of entry of the Court's order, respondent shall pay $2000 to HC, as attorney in fact for respondent's client, FM. This sum represents the amount of funds which respondent stipulated that he received from his client in trust but for which he cannot account.

6. Respondent shall submit a written report to bar counsel every 60 days during the course of his probation. The report shall detail the status of his compliance with the terms of the probation. Failure to abide by any of the terms of the Court's order will constitute a violation of probation.