# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                              NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of December, 2015**, are as follows:

**PER CURIAMS**:

2015-B -0959        IN RE: CHARLES R. JOINER

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Charles R. Joiner, Louisiana Bar Roll number 16989, be and he hereby is suspended from the practice of law for thirty days. Following completion of the suspension, respondent shall be subject to a one-year period of supervised probation, during which he shall be required to attend the Louisiana State Bar Association's Trust Accounting School and undergo quarterly trust account audits under the conditions set forth in the disciplinary board's recommendation. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

CLARK, J., concurring in part and dissenting in part.

SUPREME COURT OF LOUISIANA

NO. 2015-B-0959

IN RE: CHARLES R. JOINER

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Charles R. Joiner, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

In February 2008, the ODC received a disciplinary complaint filed by Larry and Jeri Lynn Carroll. Mr. Carroll had retained respondent to represent him in a claim for damages arising out of an automobile accident. When the claim was settled in June 2007, respondent withheld funds from the settlement proceeds to pay Mr. Carroll's medical providers; however, according to the complaint, the Carrolls received collection notices months later indicating that the medical providers had not been paid.

In March 2008, respondent filed a response to the Carrolls' complaint. He indicated that he was unaware of the problems the Carrolls were having with the medical providers, but that having been informed of such, his secretary conducted an investigation and learned the original checks issued in June 2007 had never been negotiated. Respondent further indicated that replacement checks were issued to the medical providers and that his secretary later confirmed with each medical provider that the replacement check had been received.

Two months later, in May 2008, after respondent was served with a subpoena in connection with the ODC's investigation of the complaint filed by the Carrolls, respondent's secretary, Lisa McBride, confessed that she had been embezzling money from him since 2003. She also acknowledged that she had deposited client funds into respondent's operating account, including Mr. Carroll's settlement funds. Respondent terminated Ms. McBride's employment and reported her to the police. Although Ms. McBride was unsure exactly how much money she had taken from respondent over the years, she was able to obtain a loan from a relative and made restitution to respondent in the amount of $39,312.35. Respondent directed that these funds be disbursed as follows: 1) $9,700 to be deposited into his operating account, and 2) $10,000 to be deposited into his personal bank account. The remaining funds, $19,612.35, were deposited into respondent's client trust account. At the time of these disbursements in mid-May 2008, respondent had not obtained any audit of either his operating or client trust accounts.

After depositing Ms. McBride's funds, respondent retained his CPA, George Griggs, to audit his trust account for a five-year period. Respondent did not request that Mr. Griggs audit his operating account. On July 18, 2008, Mr. Griggs provided respondent with a report indicating that only three client settlements had not been fully disbursed as of that date, "as the funds were to be held awaiting Medicare payback figures." Mr. Griggs' report also indicated that the balance in the trust account, as of that date, should have been $22,330.96. Instead, after the deposit of Ms. McBride's restitution check, the balance in the trust account was $19,612.35, which left a shortfall of $2,718.61. Upon learning of the shortfall from Mr. Griggs, respondent immediately deposited this amount into his trust account using his personal funds.

2

In January 2009, respondent gave a sworn statement to the ODC in which he related how he had come to learn of Ms. McBride's theft. He also testified that he had obtained records of both his client trust account and his operating account from his bank; however, he stated that he had not turned over all of these records to Mr. Griggs to complete an audit of the operating account because he had obtained the records primarily for the purpose of the criminal prosecution of Ms. McBride. Respondent also testified that he had not turned over the operating account records because "when all the bank records are in it may appear that I owe [Ms. McBride] money."

During the January 2009 sworn statement the ODC requested that respondent provide all of his banking records for a five-year period. Respondent was cooperative in complying with the ODC's request.

In January 2011, respondent gave a second sworn statement to the ODC. By this time, the ODC's internal auditor had reviewed respondent's bank records with a focus on the disbursements that were made in the personal injury cases handled by respondent during the 2003-2008 time frame. The auditor made particular note of the following cases:

1. Beatrice Reeves – Case settled in March 2003 for $75,000; the sum of $28,579.32 withheld from the settlement to pay Ms. Reeves' medical providers.

2. William and Johnnie Thomas – Cases settled in March 2004 for a total of $19,634.75; a total of $9,133.75 withheld from the settlements to pay Mr. and Mrs. Thomas' medical providers.

3. Syble Evans – Case settled in September 2007 for $15,000, with settlement funds initially deposited into respondent's operating account; the sum of $10,015.50 withheld from the settlement to pay Ms. Evans' medical providers.

3

In these cases, the auditor found that respondent still had client funds in his trust account, notwithstanding that the clients' cases had been settled for many years. Asked about these cases during the 2011 sworn statement, respondent testified that these were "Medicare cases" and that he believed Ms. McBride was "stealing the bulk of the money from" these funds. He testified that he had since "restored the entirety of what I was advised should've been held in there from the beginning," but he acknowledged that he had not been in contact with Medicare to determine whether there would be any claim on the funds. At the urging of the ODC, respondent committed to doing so promptly, and to refund the funds to his clients if there was no claim by Medicare.

In April 2014, the ODC retained the services of CPA Jeffrey Aucoin to audit respondent's trust and operating accounts. Mr. Aucoin reviewed respondent's trust account bank statements for the years 2003 through 2008. He also audited respondent's operating account for the years 2007 and 2008. His June 2, 2014 audit report of respondent's trust account revealed that, on February 22, 2008 (the date of the filing of the complaint against respondent), the balance in the account should have been at least $34,217.09. Instead, the actual balance in the trust account on this date was $188.61. Four of respondent's clients were impacted by the shortfall: Beatrice Reeves ($13,276.35), William and Johnnie Thomas ($9,133.75), Syble Evans ($9,870.14), and John Griggs ($1,936.85).[1]

Respondent did not make Ms. Reeves whole until disbursing the remainder of her funds in January 2011, November 2011, and June 2012. Respondent did not make Mr. and Mrs. Thomas whole until disbursing the remainder of their funds in December 2011. Respondent did not make Ms. Evans whole until disbursing the remainder of her funds in January 2011, May 2012, and June 2012. Mr. Griggs was not made whole until January 2011.

---

[1] John Griggs is not related to respondent's CPA George Griggs.

4

**DISCIPLINARY PROCEEDINGS**

In November 2013, the ODC filed formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 5.3(a)(b) (failure to properly supervise a non-lawyer assistant), and 8.4(a) (violation of the Rules of Professional Conduct). Respondent, through counsel, answered the formal charges, essentially denying any misconduct. The matter then proceeded to a formal hearing conducted by the hearing committee in June 2014.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee found the ODC's CPA, Jeffrey Aucoin, did a more thorough job of reviewing respondent's trust account and operating account than respondent's CPA, George Griggs, did in his audit. Accordingly, the committee assigned more weight to the testimony of Mr. Aucoin than to the testimony of Mr. Griggs.

The committee determined respondent proved he ultimately made his former clients (Beatrice Reeves, William and Johnnie Thomas, Syble Evans, and John Griggs) whole.[2] However, it found the ODC proved by clear and convincing evidence that respondent did not make his clients whole from the money Ms. McBride paid as restitution for a period of three to four years (from February 2008 until 2011 or 2012).

Turning to a determination of rule violations, the committee noted that respondent testified he never personally reconciled his trust account from 2003 through 2008. He also did not personally review his trust account statements and

---

[2] The committee also noted there was no evidence indicating that the medical providers for the Carrolls (who had filed the original disciplinary complaint against respondent) had not been paid.

left all accounting of his trust account to Ms. McBride. The committee determined that respondent was negligent in not personally overseeing the reconciliation of his trust account bank statements and was negligent in not supervising Ms. McBride's bookkeeping and disbursement of funds due to clients and third parties. These negligent acts facilitated Ms. McBride's ability to embezzle funds. Thus, the committee found that respondent violated Rules 5.3(a)(b) and 8.4(a) of the Rules of Professional Conduct. The committee further found that respondent violated Rule 1.15 in two respects: by depositing Ms. McBride's $9,700 check into his operating account and depositing Ms. McBride's $10,000 check into his personal account, and by waiting until 2011 and 2012 to make his clients whole even though he received Ms. McBride's restitution in 2008. Respondent failed to keep money due to clients separate from his own money, and his conversion of funds and lack of urgency in reimbursing the clients caused harm by depriving the clients of their funds for three to four years. However, the committee concluded that in both instances, respondent did not act knowingly because he did not know that either a client or third party had not been paid.

The committee then determined that respondent acted negligently and that the baseline sanction is a public reprimand according to the ABA's *Standards for Imposing Lawyer Sanctions*. In aggravation, the committee found that respondent has substantial experience in the practice of law (admitted 1985). The committee also observed that respondent was negligent in delegating the duty of overseeing his trust account to Ms. McBride, he was negligent in not requiring that his trust account statements be reconciled between 2003 and 2008, and he was negligent in permitting Ms. McBride to have unsupervised access to his trust account. In mitigation, the committee found an absence of a prior disciplinary record and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings. The committee also found in mitigation that respondent made his

6

clients whole and that he had no intent to enrich himself at the expense of a client or third party.

Under these circumstances, the committee recommended that respondent be publicly reprimanded. The committee also recommended that respondent be placed on probation for two years, with the conditions that he personally review his trust account statements, reconcile the statements with his checkbook balance on a monthly basis, and report that he has done so monthly to the ODC or a member of the disciplinary board.

Both respondent and the ODC filed objections to the hearing committee's report and recommendation. Respondent also objected to the cost statement, specifically objecting to the ODC's costs associated with Mr. Aucoin's audit report, which totaled $11,471.48. After reviewing the matter, the committee chair declined to impose these costs against respondent.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the testimony and/or the documentary evidence.

The board then determined that respondent negligently violated duties owed to his clients, the legal system, and the legal profession. His conduct caused little actual harm but could have potentially caused serious harm. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the baseline sanction is a public reprimand.

In aggravation, the board found a pattern of misconduct by respondent (in failing to supervise Ms. McBride and in failing to reconcile his trust account) and substantial experience in the practice of law. In mitigation, the board found the absence of a prior disciplinary record, the absence of a dishonest or selfish motive,

7

and full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.

After considering this court's prior jurisprudence addressing similar misconduct, a majority of the board recommended that respondent be suspended from the practice of law for thirty days, fully deferred, subject to a one-year period of probation, during which he should be required to attend the Louisiana State Bar Association's Trust Accounting School and undergo quarterly trust account audits performed by an ODC-approved CPA who will report the findings to the ODC. Additionally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, except the costs associated with Mr. Aucoin's audit and audit report.

One board member dissented and would recommend a public reprimand and a two-year period of probation, as recommended by the hearing committee.

Both respondent and the ODC filed objections to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within our original jurisdiction. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

8

The hearing committee made a factual finding that respondent's negligent supervision of his non-lawyer assistant facilitated her embezzlement of client funds. Thus, the committee found respondent's actions violated Rule 5.3(b), which provides that a "lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer," as well as Rule 1.15, which requires the lawyer to safeguard client funds.

This finding is supported by the record and is consistent with our jurisprudence. We have long recognized that a lawyer's duty to safeguard client funds includes the duty to supervise nonlawyer assistants who have access to client funds.

A seminal case addressing this issue is *Louisiana State Bar Ass'n v. Keys*, 567 So. 2d 588 (La. 1990). In *Keys*, the lawyer was representing a succession and established a checking account for succession funds. Without the lawyer's knowledge, his secretary removed funds from the succession account and transferred them to an operating account. Upon learning of the withdrawals, the lawyer reimbursed the funds prior to the filing of the complaint. In our opinion, we agreed that the lawyer was unaware of his secretary's actions. Nonetheless, citing DR 9-102 (the predecessor provision to Rule 1.15), we found the lawyer was negligent in failing to establish adequate procedures for handling client funds:

> While respondent did not know of the misuse of the funds in the present case at a time when the consequences could have been avoided, his negligence in failing to establish adequate procedures for handling the client's funds resulted in the commingling of the client's funds with those of the attorney and the use of the client's funds for the attorney's personal purposes. **Perhaps an attorney may blindly trust an employee with his own funds, but the attorney who undertakes to handle a client's funds has the duty to take reasonable steps to safeguard the funds.** Here, respondent's duty under DR 9-102 to safeguard the funds of a client included the duty of reasonable supervision of

> the nonlawyer employee who actually handled the funds. Respondent failed to instruct his employee on the concept of escrow accounts and failed to check periodically the handling of the funds held in escrow. Respondent's supervisory failures over a long period of time created a fertile environment for his employee's misuse of the funds.

*Id.* at 592 [emphasis added].

The reasoning of *Keys* is particularly appropriate under the facts of the case at bar. Although respondent may have been victimized by his assistant's improper actions, the ethical rules and jurisprudence of this court impose an overarching duty on the lawyer to safeguard the funds of the lawyer's clients. As in *Keys*, respondent's failure to supervise his assistant created a fertile environment for her embezzlement. Respondent's actions clearly constitute negligent violations of Rule 5.3 and Rule 1.15.

In the prior negligent supervision cases which have been presented to this court, the lawyer typically made prompt and complete restitution to his clients upon learning of the nonlawyer's improper actions. In such cases, we have imposed minimal sanctions. For example, in *In re: Caver*, 632 So. 2d 1157 (La. 1994), we publicly reprimanded a lawyer who failed to properly supervise his non-lawyer assistants, noting that he "promptly made not only full restitution, but also compensated his client for any consequential inconvenience..."

In the case at bar, respondent ultimately made full restitution to his clients. However, we must determine whether he did so in a prompt and reasonable manner consistent with his ethical obligations, as resolution of this issue will impact our determination of the appropriate sanction in this case.

The record reveals respondent became aware of Ms. McBride's embezzlement in early 2008. On May 19, 2008, Ms. McBride paid respondent a total of $39,312.35 as restitution for her actions. This payment consisted of three checks: (1) a check made payable to respondent in the sum of $19,612.35, which

was deposited into respondent's trust account; (2) a check made payable to respondent for $9,700, which was deposited into his operating account or regular account; and (3) a check made payable to respondent in the sum of $10,000, which was deposited into his personal account when he gave the check to his wife.

Respondent suggests he acted reasonably in failing to deposit two of these checks into his trust account because, at the time, he did not believe that either a client or third party had not been paid. Nonetheless, the record reveals that at the time respondent deposited these checks, he had not yet performed a complete audit of his accounts for the purposes of determining whether any payments remained to be made to his clients or any third parties. In particular, respondent failed to provide his CPA with his operating account records for auditing purposes, despite learning from Ms. McBride that some client settlement funds were deposited into the account. Because of his failure to provide these records to his CPA, the audit done by his CPA failed to identify the $9,870.14 that should have been in the trust account from Ms. Evans' settlement. In a January 2009 sworn statement to the ODC, respondent indicated he did not provide those records to his CPA because he believed they would show Ms. McBride paid him too much in restitution, and he would owe her money. This statement suggests respondent placed his own interests above those of his clients.

Subsequent audits indicated that as of 2008, respondent should have held funds in trust for four clients: (1) Ms. Reeves ($13,276.35); (2) Mr. Thomas ($9,133.75); (3) Ms. Evans ($9,870.14); and (4) Mr. Griggs ($1,936.85). Respondent ultimately did not make these clients whole until 2011 or 2012, approximately three or four years after he first received the funds from Ms. McBride.

Under these circumstances, we conclude respondent's negligent supervision of his nonlawyer assistant was coupled with a willful indifference toward his

11

obligation to make prompt restitution to remedy the consequences of his negligence. We conclude such conduct warrants an actual period of suspension. Accordingly, we will suspend respondent from the practice of law for thirty days, followed by a one-year period of probation, during which he shall be required to attend the Louisiana State Bar Association's Trust Accounting School and undergo quarterly trust account audits under the conditions set forth in the disciplinary board's recommendation. We will further impose all costs of these proceedings against respondent.[3]

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Charles R. Joiner, Louisiana Bar Roll number 16989, be and he hereby is suspended from the practice of law for thirty days. Following completion of the suspension, respondent shall be subject to a one-year period of supervised probation, during which he shall be required to attend the Louisiana State Bar Association's Trust Accounting School and undergo quarterly trust account audits under the conditions set forth in the disciplinary board's recommendation. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

---

[3] We decline to adopt that portion of the board's recommendation which did not assess the costs of the Aucoin audit and audit report against respondent. Respondent's actions necessitated the preparation of this audit and audit report; therefore, we find it appropriate to assess these costs against him.

SUPREME COURT OF LOUISIANA

NO. 2015-B-0959

IN RE: CHARLES R. JOINER

ATTORNEY DISCIPLINARY PROCEEDING

Clark, J., concurring in part and dissenting in part.

I concur with the majority in that respondent was negligent in his supervision of his nonlawyer assistant and, thus, subject to some discipline, but disagree with the majority's conclusion that he showed a willful indifference toward his obligation to make prompt restitution to his clients and third parties. I agree with the Hearing Committee, which serves as the eyes and ears of this Court, which found that respondent did not act knowingly in failing to make earlier restitution, because he did not know that either a client or third party had not been paid until such was revealed by a subsequent audit. For these reasons, I agree with the committee's recommendation that the maximum discipline should be a public reprimand with probation.

Further, I disagree with the majority's allocation to respondent the entire cost of the subsequent audit and audit report. These additional costs were in part necessitated by a change in the ODC's internal auditor, which was beyond respondent's control.