*1008 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Sherman Gerald Ruth, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in March 2005. In re: Ruth, 05-0676 (La.3/30/05), 898 So.2d 318.
FORMAL CHARGES

08-DB-079

Count I — The Coley Matter
In March 2002, Caren Coley hired respondent to represent her in a pending divorce matter, paying him $750 for his services. Respondent still had not completed the divorce when Ms. Coley filed a disciplinary complaint against him in June 2002.
In February 2003, the ODC requested that respondent provide an accounting of the fee Ms. Coley paid. Respondent did not respond to this request, necessitating the issuance of a subpoena to obtain his sworn statement. During his sworn statement, respondent presented an accounting of the work performed and time spent on Ms. Coley’s matter; however, he failed to produce copies of the | ^documents he supposedly prepared. Therefore, he failed to account for the fee paid.
Respondent did not enroll as Ms. Coley’s counsel and did not file a petition on her behalf. He also did not request that a curator be appointed, despite informing the ODC that he was at that point in the divorce proceeding.
Because respondent failed to complete the divorce, Ms. Coley eventually hired another attorney, who filed an amended petition for divorce and a motion to appoint a curator in September 2003. Ms. Coley’s divorce was granted in December 2003.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
*1009 | zCount II — The Milow Matter
Between late January and early February 2002, Adrian Milow paid respondent a total of $1,000 to represent him in a child support matter pending in California. At the time respondent was paid these legal fees, he was not licensed to practice law in Louisiana or California.[1] Thereafter, respondent failed to perform any work on the matter, and Mr. Milow hired an attorney in California to represent him.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5 (engaging in the unauthorized practice of law), 8.4(a), and 8.4(c).
Count III — The Noyel/Brown Matter
In July 2002, Lovenia Noyel paid respondent $4,000 to represent her grandson, DeBrandon Brown, in a criminal appeal. On August 2, 2002, respondent appeared in court at Mr. Brown’s sentencing as his attorney of record. Respondent filed a motion to appeal and received a return date from the court of appeal.
Thereafter, he was granted two extensions of time to file an appellate brief. Nevertheless, he failed to file the brief on time and was advised to file a motion requesting permission to file the brief. Respondent claimed he then instructed his law clerk to file the brief and did not become aware that the brief had not been filed until he spoke to Ms. Noyel in September 2003.
Ms. Noyel hired a new attorney to represent Mr. Brown and requested a full refund from respondent. Despite failing to timely file the appellate brief or submit evidence that he actually prepared the brief, respondent did not refund any portion of the fee. He also did not provide Ms. Noyel with an accounting to determine the unearned portion of the fee.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15(d) (failure to timely remit funds to a client or third person), 1.16 (declining or terminating representation), 5.3(b) (failure to properly supervise a non-lawyer assistant), 8.4(a), and 8.4(c).
Count IV — The Ennis Matter
In January 2004, James Ennis, Jr. paid respondent $1,000 to represent him in a child custody and support matter. Thereafter, respondent obtained a copy of the relevant court case record for review in preparation for the representation.
In May 2004, Mr. Ennis filed a disciplinary complaint against respondent, alleging that respondent failed to complete the matter and failed to communicate |4with him. In October 2004, respondent admitted that he failed to perform any work on Mr. Ennis’ matter after obtaining the ease record. Respondent also admitted that he owed Mr. Ennis a refund of most, if not all, of the $1,000 fee. Nevertheless, respondent failed to refund any portion of the fee and failed to provide an accounting of the hours he expended and the work he performed.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(a) (charging an unreasonable fee), 1.15(d), 1.16, 8.4(a), and 8.4(c).
Count V — The Rathmann-Keogh Matter
During the course of respondent’s personal injury practice, he referred numerous clients to the Rathmann-Keogh Chiropractic Clinic (“RKCC”) for medical *1010 treatment. Respondent admitted that $28,000 in medical bills owed to RKCC as a result of treatment provided to his clients was not paid. Respondent claimed he learned of the unpaid accounts in August 2004 and further claimed his assistant at the time, who was responsible for paying third-party medical providers from settlement funds, had stolen the funds instead. According to RKCC, respondent did not report his assistant to the authorities. Respondent also failed to submit evidence to the ODC to substantiate his claim that his assistant converted the funds. As of September 2004, when RKCC filed its disciplinary complaint, it had not received any of the sums due from respondent.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(d), 5.3(b), 8.4(a), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c).
1 ¿Count VI — The Credit Matter
In October 2002, Jean Nicole Credit hired respondent to represent her in a personal injury matter stemming from an automobile accident. In July 2004, Ms. Credit learned that another victim of the accident had received settlement proceeds in February 2004. When Ms. Credit asked respondent what the status of her claim was, he advised her that he had received funds on her behalf and would provide her with a check within a week. Over the next several weeks, Ms. Credit tried to contact respondent numerous times, to no avail. In November 2004, respondent contacted Ms. Credit and informed her that his assistant had stolen her settlement proceeds. He also informed her that he was securing a loan to disburse the funds owed her.
In February 2005, Ms. Credit filed a disciplinary complaint against respondent because she had still not received her portion of the settlement proceeds. After failing to respond to the ODC’s written notices of the complaint, respondent was subpoenaed to provide a sworn statement. Respondent appeared for the sworn statement but did not bring Ms. Credit’s file because he had been denied access to the storage unit where it was located for failing to pay the storage fees.
Respondent settled Ms. Credit’s claim for $5,000 but never disbursed funds to her or to her medical providers. He also failed to submit evidence to substantiate his claim that his assistant converted the funds.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.15(d), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(b), and 8.4(c).
1 fíCount VII — The Escort Matter
Yolanda Escort hired respondent to represent her and her minor nephew in a personal injury matter stemming from an automobile accident that occurred on November 15, 2002. On July 15, 2004, Ms. Escort was contacted by the doctor’s office where she and her nephew had received treatment for the injuries they sustained in the accident. The doctor’s office was attempting to collect payment from Ms. Escort because the staff claimed they had been unable to contact respondent about the debt.
Ms. Escort learned that the personal injury matter had been settled in August 2003 and that her signature had been forged on the settlement check.[2] Respon *1011 dent failed to respond to Ms. Escort’s request for her file. She hired a new attorney, who also requested her file from respondent, to no avail.
In April 2005, Ms. Escort filed a disciplinary complaint against respondent. Respondent failed to respond to three notices of the complaint sent via certified mail, necessitating the issuance of a subpoena to obtain his sworn statement. However, service attempts made by the East Baton Rouge Parish Sheriffs Office in January 2006 were unsuccessful.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(d), 8.1(c), 8.4(a), 8.4(b), and 8.4(c).
Count VIII — The Major Matter
On April 26, 2002, Doris Major hired respondent to defend her in a civil lawsuit, paying him a total of $2,000. On August 10, 2002, Ms. Major was served |7with court documents informing her that respondent had failed to appear for a hearing.
In August 2005, Ms. Major filed a disciplinary complaint against respondent. Via letter dated May 14, 2007, respondent advised the ODC that, after researching the details of Ms. Major’s case, he had decided he would not be able to assist her. Therefore, he instructed his staff to prepare a withdrawal letter and refund Ms. Major’s retainer fee. Respondent indicated that he would find out if the refund check he instructed his staff to send to Ms. Major was ever negotiated, and, if not, he would refund the fee. On September 23, 2007, Ms. Major informed the ODC that she had not yet received a refund.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.5(a), 1.15(d), 1.16(d) (obligations upon termination of the representation), 8.4(a), 8.4(b), and 8.4(c).
Count IX — The Goff Matter
Respondent referred eighteen of his clients to Dr. Michael Goff for chiropractic treatment. However, after settling the clients’ cases, respondent did not remit payment for the treatment Dr. Goff provided to the clients. Dr. Goff has been trying to collect these funds since 2003, and he met with respondent in 2005 to make him aware of the $52,595.50 balance that remains on eighteen accounts.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(d), 8.4(a), 8.4(b), and 8.4(c).

09-DB-OÍ0

Count I — The LeBlanc Matter
In October 2003, respondent re-eeived a $13,000 fee to represent Lawrence Lance LeBlanc and his wife, Tawanna Le-Blanc, in a criminal matter. In an effort I «to ensure adequate representation, Mr. LeBlanc hired another attorney to act as respondent’s co-counsel.
During the course of the representation, respondent was interimly suspended from the practice of law. Nevertheless, respondent failed to inform the LeBlancs of his suspension and, approximately two months later, failed to appear for a scheduled hearing in the LeBlancs’ legal matter. Instead, without consulting with the Le-Blancs, respondent arranged for another attorney to appear on their behalf.
In June 2006, Mr. LeBlanc filed a disciplinary complaint against respondent. The complaint alleged that respondent was not punctual for scheduled court appearances, failed to return telephone calls, failed to complete the representation, and failed to refund the unearned fee.
The ODC alleged respondent’s conduct violated the following provisions of the *1012 Rules of Professional Conduct: Rules 1.3, 1.4,1.15(d), 1.16(d), 8.4(a), and 8.4(c).
Count II — The Bernard, Matter
In February 2004, John Bernard paid respondent $2,000 to answer a lawsuit filed against him and file a counter suit on his behalf. Respondent failed to perform any work on Mr. Bernard’s legal matter and failed to refund the fee.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15(d), 8.4(a), and 8.4(c).
Count III — The Clark Matter
In January 2005, Dianne Clark paid respondent $1,500 to represent her son in a criminal matter. During the course of the representation, respondent was interimly suspended from the practice of law. Respondent failed to inform Ms. Clark of his suspension and failed to appear for a scheduled hearing in her son’s | ncase. In May 2007, respondent informed the ODC that he was willing to refund the fee. However, he failed to do so.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15(d), 1.16(d), 8.4(a), and 8.4(c).
Count IV — The Hays/Phillips Matter
In November 2004, Davell Hays paid respondent $2,000 to represent his son, Davell Phillips, in a criminal matter in West Baton Rouge Parish. However, respondent failed to enroll as counsel of record, and the court appointed the Indigent Defender Board to represent Mr. Phillips at his arraignment.
Mr. Phillips was transferred to the custody of the United States Marshal in a separate criminal matter. Despite being listed as Mr. Phillips’ counsel of record in the federal criminal matter, respondent failed to appear for a show cause hearing. In March 2005, respondent was allowed to withdraw as counsel of record. However, he did so without consulting with Mr. Phillips or refunding any portion of the fee paid by Mr. Hays.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15(d), 8.4(a), and 8.4(c).
Count V — The Kelly Matter
Respondent was retained to represent Wilbert Kelly, Jr. in a criminal matter. On December 8, 2003, the day of Mr. Kelly’s trial, respondent telephoned the trial judge and informed him that he was too ill to appear in court. The judge ordered respondent to file a written motion for continuance and attach a doctor’s note verifying he was not able to appear in court. Because the doctor’s note indicated | ^respondent could return to work the next day, the judge rescheduled the trial for December 9, 2003.
Respondent was notified of the new trial date but advised the clerk’s office that he would not be able to appear. When he, in fact, failed to appear in court on December 9, 2003, the judge issued a warrant for his arrest and continued the trial until April 26, 2004. Eventually the warrant was recalled, and respondent was ordered to show cause why he should not be held in contempt for his failure to appear. On June 15, 2004, after considering the testimony presented, the judge found respondent in contempt of court and sentenced him to serve two days in jail.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 3.5(d) (a lawyer shall not engage in conduct intended to disrupt a tribunal), 8.4(a), and 8.4(c).
Count VI — The Scott Matter
Warren and Debra Scott hired respondent to defend their son against several criminal charges. The Scotts became *1013 dissatisfied with respondent’s defense strategy and accused him of being dishonest. They alleged that respondent provided ineffective assistance of counsel and, consequently, requested a refund of the $6,000 fee they paid.
Although respondent performed work in the matter, he failed to provide an accounting of payments received from the Scotts or documentation of the specific work he performed. Therefore, the question of whether respondent charged an excessive fee cannot be resolved.
Respondent failed to submit a written response to the disciplinary complaint the Scotts filed against him in June 2005, necessitating the issuance of a subpoena to obtain his sworn statement.
lnThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f)(4) (failure to render an accounting of client funds), 8.1(c), and 8.4(a).

09-DB-Oil

Count I — The Franklin Matter
In September 2003, Pamela Franklin hired respondent to represent her in a personal injury matter stemming from a slip and fall that occurred in Biloxi, Mississippi. Although respondent was not licensed to practice law in Mississippi, he represented Ms. Franklin and eventually settled her claim.
According to Ms. Franklin, respondent settled the claim without her knowledge or authority.[3] Respondent admitted that he endorsed the signatures of both Ms. Franklin and her husband on the settlement check, asserting that he had power of attorney authorizing him to do so. However, Ms. Franklin’s husband was not respondent’s client, and the Franklins claimed they did not grant respondent the authority to sign either of their names to the check. Respondent failed to comply with the ODC’s request to produce documentation supporting his contention that he had the authority to sign the Franklins’ names.
Respondent admitted that he had not performed a monthly reconciliation of his client trust account. He also indicated that Ms. Franklin’s funds and the funds owed to her medical providers were misappropriated by his secretary; however, he did not report this alleged criminal conduct to law enforcement.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3, 1.4, 1.15(d), 1.16(d), 8.4(a), and 8.4(c).
I ^DISCIPLINARY PROCEEDINGS
In October 2008, the ODC filed formal charges against respondent in 08-DB-0790. In June 2009, the ODC filed formal charges against respondent in 09-DB-040 and in 09-DB-041. Respondent failed to answer all three sets of formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). The three matters were then consolidated for consideration by one hearing committee. No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee acknowledged that the factual allegations of the formal charges have been deemed admitted and, thus, proven by clear and *1014 convincing evidence. Nevertheless, in all but the Goff matter, the committee made detailed factual findings that were, in essence, consistent with the deemed admitted factual allegations. Based on these facts, the committee concluded that respondent violated the Rules of Professional Conduct as charged in each count of the formal charges.
The committee determined that respondent violated duties owed to his clients, the legal system, and the legal profession. The committee further determined that respondent acted knowingly. However, the committee did not find respondent’s explanation about his assistant stealing client funds to be credible because he did not report his assistant to law enforcement or produce documentation supporting his claim. Therefore, the committee found that he acted 11sintentionally in settling cases and converting client funds. His actions, whether converting client funds or failing to refund unearned fees, resulted in a monetary loss for each of his clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment.
In aggravation, the committee found the following factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law (admitted 2002), indifference to making restitution, and illegal conduct. In mitigation, the committee found only the absence of a prior disciplinary record.
After further considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the factual allegations of the formal charges have been deemed admitted and proven by clear and convincing evidence, with some exceptions. The board also determined that the hearing committee correctly applied the Rules of Professional Conduct, again with some exceptions. The board’s determinations and exceptions are as follows:
The Coley Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal | Hcharges. Additionally, the board determined that respondent violated Rule 1.5(f)(5) (failure to refund an unearned fee).[4]
The Milow Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Noyel/Brown Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rules 1.4 and 1.15(d). The board found insufficient evidence to support a violation of Rule 1.4 because the sworn statements of respondent and Ms. Noyel indicate that a factual dispute exists regarding respondent’s failure to communicate.[5] The board also de *1015 termined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Ennis Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rules 1.5(a) and 1.15(d). The board determined that nothing in the deemed admitted facts or in the record supports a finding that respondent charged an unreasonable fee in violation of Rule 1.5(a). The board also determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Rathmann-Keogh Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 8.4(b). The board declined to find a violation of Rule 8.4(b) because it was not readily apparent from the deemed admitted facts or the record that respondent’s misconduct amounted to a criminal act.
\KThe Credit Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Escort Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Major Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rules 1.5(a) and 1.15(d). The board determined that nothing in the deemed admitted facts or in the record supports a finding that respondent charged an unreasonable fee in violation of Rule 1.5(a). The board also determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Goff Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The LeBlanc Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rules 1.16(d) and 1.15(d). The board determined there is no clear and convincing evidence of a Rule 1.16(d) violation because the deemed admitted factual allegations and the record only show a factual dispute between respondent and the LeBlancs as to how the other attorney became involved in the case. The board also determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Bernard Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 1.15(d). The board determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
| mThe Clark Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 1.15(d). The board determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Hayes/Phillips Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 1.15(d). The board determined that respondent’s failure to refund unearned fees was a violation of Rule 1.5(f)(5) rather than Rule 1.15(d).
The Kelly Matter — The record supports the committee’s conclusion that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Scott Matter — The record supports the committee’s conclusion that respondent *1016 violated the Rules of Professional Conduct as alleged in the formal charges.
The Franklin Matter — The board found violations of the Rules of Professional Conduct as alleged in the formal charges, with the exception of Rule 1.16(d). The board determined there is no clear and convincing evidence of a Rule 1.16(d) violation because the deemed admitted factual allegations and the record do not support the allegation that respondent failed to properly withdraw from the representation.
Based on these findings, the board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent’s misconduct caused actual harm to his clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the applicable baseline sanction is disbarment.
In aggravation, the board found the following factors: a dishonest or selfish motive, submission of false evidence, false statements, or other deceptive practices li7during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, and indifference to making restitution. The only mitigating factor found by the board was the absence of a prior disciplinary record.
After further considering respondent’s misconduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as case law involving similar misconduct, the board recommended that respondent be permanently disbarred. The board further recommended that respondent pay restitution to his clients and the aggrieved third parties.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
|1sThe record in this deemed admitted matter supports a finding that respondent, among other things, neglected legal matters, failed to communicate with clients, failed to refund unearned fees, failed to timely remit funds to clients and third parties, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board, with the following exceptions:
In the Coley matter, the formal charges do not allege respondent failed to refund an unearned fee, nor do they give respondent sufficient notice of this violation; *1017 therefore, we do not find that respondent violated Rule 1.5(f)(5) of the Rules of Professional Conduct. However, the formal charges do allege that respondent failed to account for the fee paid by Ms. Coley; thus, we find that respondent violated Rule 1.5(f)(4). In the Credit matter, as in the Rathmann-Keogh matter, it is not readily apparent from the deemed admitted facts or the record that respondent’s misconduct amounted to a criminal act; therefore, we do not find respondent violated Rule 8.4(b). In the LeBlanc matter, respondent did not inform his clients of his interim suspension and resulting inability to continue representing them; thus, we find that respondent did, in fact, violate Rule 1.16(d). Additionally, the deemed admitted factual allegations indicate only that respondent’s clients alleged he failed to refund the unearned fee. Without a definitive deemed admitted factual allegation that respondent actually failed to refund an unearned fee, we find respondent did not violate Rule 1.5(f)(5). Finally, in the Bernard matter, the formal charges do not allege respondent failed to communicate with his client; therefore, we do not find that he violated Rule 1.4.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the 11flprofession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
We find that respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession. His misconduct caused significant actual harm. The baseline sanction for this type of misconduct is disbarment.
The record supports the following aggravating factors: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and indifference to making restitution. We agree with the hearing committee and the board that the only mitigating factor present is the absence of a prior disciplinary record.
In their reports, both the committee and the board concluded respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar. We agree. Respondent settled personal injury cases and then failed to remit approximately $100,000 to his clients and/or the third-party medical providers. Additionally, respondent failed to refund approximately $12,500 in unearned fees, effectively converting those funds to his own use. Under these circumstances, we find that respondent engaged in repeated or multiple instances of intentional conversion of client funds with substantial harm, as required by Guideline 1 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E.
12qAccordingly, we will adopt the disciplinary board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to his victims.
DECREE
Upon review of the findings and recommendations of the hearing committee and *1018 disciplinary board, and considering the record, it is ordered that the name of Sherman Gerald Ruth, Louisiana Bar Roll number 27759, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. Respondent was not admitted to the practice of law in Louisiana until February 28, 2002.

. The record indicates that respondent settled Ms. Escort’s claim for $4,502 and her nephew's claim for $3,577.

. The record indicates that respondent settled Ms. Franklin's claim for $6,500.

. The board noted that it may find a violation of a provision of the Rules of Professional Conduct, even when the provision is not specifically enumerated in the formal charges, if the factual allegations have provided respondent with sufficient notice of the potential violation. See Supreme Court Rule XIX, § 11(E), In re: Ashy, 98-0662 (La. 12/1/98), 721 So.2d 859, and Louisiana State Bar Ass’n v. Keys, 567 So.2d 588 (La. 1990).

. Additionally, the formal charges do not allege that respondent failed to communicate with his client.